UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARLA BARTHOLOMEW, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Case No. 08-cv-4057 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Darla Bartholomew, slipped on some ice on a Navy Base and broke her wrist. Because her injury was allegedly caused by the negligent acts or omissions of employees of the United States, Plaintiff brings this tort action against the United States ("Defendant") under the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. § 2671 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1346. Presently before the Court is Defendant's Motion for Summary Judgment.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local rule 56.1. Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by

Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).[1]

In the late afternoon of February 8, 2006, Plaintiff went to the Navy Exchange Commissary ("Commissary") located on the Navy Base ("Base") in Great Lakes, Illinois. (SOF ¶ 4.) She was accompanied by an individual named Jennifer McCraw. (SOF ¶ 15.) Plaintiff parked her vehicle in the front half of the parking lot, closest to the building. (SOF ¶ 6.)

Trace amounts of snow had fallen earlier that day accompanied by mist and freezing fog, but it was not snowing while Plaintiff was at the Commissary. (SOF ¶ 5.) The temperature on the day of the accident remained between thirteen and twenty-nine degrees Fahrenheit. (SOF ¶ 5.) There were no mounds of snow by Plaintiff's parking spot, but there were piles of snow in the back of the parking lot. (SOF ¶ 6.) Plaintiff also observed snow and ice patches at the side of her truck and saw "matted down" patches of snow, which appeared to have turned into ice, elsewhere in the lot. (SOF ¶ 6.) Plaintiff noticed the ice and snow and, as she walked inside, huddled closer to McCraw. (SOF ¶ 7.) Once inside, at least two people warned her that she should be careful because of the bad conditions. (SOF ¶ 7.)

---

[1] Local Rule 56.1 contemplates that a party opposing summary judgment will respond to each of the moving party's separately numbered statements of material fact and then provide up to forty additional statements of fact supporting a denial of summary judgment. In this case, it appears that Plaintiff has combined the two parts by asserting some of her additional statements of fact in her responses to Defendant's statements of fact (1 through 13). Defendant's *Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts and Additional Material Facts* (Docket No. 29) responds to all thirty of Plaintiff's statements and compiles both parties' factual assertions and responses in one document. Therefore, citations are to that document and are cited to throughout this Opinion as "SOF ¶ __."

Between 4:00 p.m. and 5:00 p.m., after leaving the Commissary, Plaintiff approached her truck with her bags of purchased items, slipped on a patch of ice, and broke her wrist.[2] (SOF ¶¶ 8, 10.) McCraw was still with her at the time. (SOF ¶ 28.) Plaintiff initially stated that the ice on which she slipped was the result of an unnatural accumulation of ice from melted snow that ran down an incline in the parking lot, but she later testified that she is sure the ice was from "matted down" patches of snow. (SOF ¶ 9.) Other persons who came to the scene after the accident, including McCraw and Plaintiff's daughter, were slipping and sliding in the lot. (SOF ¶ 17.)

Defendant's Snow Removal Plan, which was in place on the day of the incident, calls for automatic plowing when the snowfall exceeds three inches. (SOF ¶ 11.) It was implemented for safety. (SOF ¶ 25.) The Snow Removal Plan does not expressly provide for any ice-removal procedures but does request that any manager or associate throw salt on icy spots if they see them. (SOF ¶¶ 11, 24.) Each location on the Base, including the Commissary, had a large supply of Ice Melt, a substance to spread over ice to aid in melting, visible to and available for anyone to use. (SOF ¶ 11.)

Part of the Base's maintenance crew's responsibilities involved performing visual inspections to check for maintenance problems and Ice Melt supply. (SOF ¶ 23.) The

---

[2] The parties vigorously dispute the time of the accident – presumably because of Plaintiff's complaint that it was dark out at the time. Plaintiff's claim report states that the accident occurred at 5:00 p.m. (SOF ¶ 8.) However, Plaintiff later testified that she was going to take McCraw somewhere by 4:30 p.m. and that the accident occurred a little after 4:00 p.m. (SOF ¶¶ 8, 15.) At any rate, the accident indisputably occurred between 4:00 p.m. and 5:00 p.m. The parties also unreasonably dispute the time McCraw got off work. Plaintiff states that she was at work until 4:00 to 4:30 p.m.; Defendant states that it was between 3:30 and 4:00 p.m. (SOF ¶ 29.) Her testimony is that it was between 3:30 and 4:30 p.m. (SOF ¶ 29.)

3

maintenance department at the Base accepted responsibility for removal of ice and snow in the Commissary parking lot and did not contract the work out to another company. (SOF ¶ 23.) However, if the maintenance department became aware that the lot was icy all over, it would call the Department of Public Works. (SOF ¶ 25.) Public Works did not automatically come out to salt the lot if there were no snow fall. (SOF ¶ 25.)

At some time after the incident, Plaintiff spoke with Verna Goodwin, a customer-service supervisor at the Navy Exchange, and told her of her injury.[3] (SOF ¶ 18.) As part of her responsibilities, Goodwin checks the store and outer area for any problems and checks the parking lot on an hourly basis to ensure it has been plowed and salted. (SOF ¶ 26.) She had learned of a Snow Removal Plan long before 2006. (SOF ¶ 27.) Goodwin understood that if she saw a hazard, such as an icy lot, she could call the maintenance crew. (SOF ¶ 27.)

Kim Andrzejewski, a Navy Exchange Facilities Clerk, is responsible for the vehicles used for plowing and prepared the Snow Removal Plan for 2006 and 2007. (SOF ¶¶ 13, 21, 22.) She takes calls for maintenance issues and would dispatch appropriate persons to address problems or call Public Works, which is on the Base, if there were a problem that maintenance could not handle. (SOF ¶ 19.) Andrzejewski was working on the day of the incident; she testified that she never received any call concerning unsafe conditions at the parking lot on the day in question, and her business

---

[3] Plaintiff also asserts that Goodwin told her she had called five hours before her fall to have maintenance salt the parking lot, but they never came. (SOF ¶¶ 18, 30.) This statement is inadmissible hearsay, and it will be disregarded for purposes of this Motion for Summary Judgment. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997) (stating that hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial).

4

records do not reflect such a call. (SOF ¶ 13.) Her notes also do not show any snow- or ice-removal requests from January 3, 2006, through the time of the injury during which time there had been snow, rain, and freezing fog. (SOF ¶ 20.)

Weather reports from the week before the incident indicate that there was no significant warming of temperatures in the four days prior to the incident. (SOF ¶ 12.) There was some moderate precipitation and above-freezing temperatures earlier in the week. (SOF ¶ 12.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the

nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Defendant asserts that Plaintiff has not alleged facts sufficient to establish that Defendant breached any duty owed to Plaintiff. Defendant also contends that Plaintiff cannot establish that Defendant had any notice of any allegedly unsafe conditions and, if such conditions existed, that danger would have been open and obvious to Plaintiff. Therefore, Defendant argues that it is entitled to judgment as a matter of law.

The FTCA authorizes tort actions against the United States for personal injury caused by any employee of the United States while acting within the scope of his or her employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act occurred. *See* 28 U.S.C. §§ 1346(b), 2671, 2674. Here, Plaintiff's accident occurred in Illinois, so Illinois tort law applies. *See Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991).

As a public entity, the United States is protected under the Illinois Local Government Tort Immunity Act. *Rose v. United States*, 929 F. Supp. 305, 307 (N.D. Ill.

6

1996) (*Rose*) (citing *Cooks v. United States*, 815 F.2d 34, 35 (7th Cir. 1987)). "Consequently, in order for [Plaintiff] to prevail on her claim she must prove that she was owed a duty of care by the United States, that a breach of this duty proximately caused her injuries, and that the United States had actual or constructive notice of the allegedly unsafe condition in time to correct it." *Id.* at 307-08 (citation and internal quotation marks omitted).

In the absence of a contractual obligation, there is no general duty of a property owner in Illinois to remove natural accumulations of snow or ice from areas used by invitees. *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 482 (7th Cir. 2009) (*Ciciora*)(citations omitted). Property owners may, however, be liable for *unnatural* accumulations of ice or snow caused by a negligent, voluntary undertaking to remove natural accumulation. *Id.* If a property owner does voluntarily undertake snow removal, its duty is not to remove all snow and ice but only to remove as much as reasonably possible. *Crane v. Triangle Plaza, Inc.*, 591 N.E.2d 936, 940 (Ill. App. Ct. 1992) (*Crane*). The "[m]ere removal of snow, which leaves a natural accumulation of ice on the surface, does not of itself constitute negligence." *Rose*, 929 F. Supp. at 308 (citing *Webb v. Morgan*, 531 N.E.2d 36, 39 (Ill. App. Ct. 1988)).

Mere speculation about the cause of unnatural accumulation is not enough to defeat a motion for summary judgment, and Illinois appellate courts have affirmed summary judgments when the plaintiff has failed to show specific evidence of a causal

link between a defendant's actions and the unnatural accumulation. *See, e.g., Madeo v. Tri-Land Props., Inc.*, 606 N.E.2d 701, 704-05 (Ill. App. Ct. 1992); *Crane*, 591 N.E.2d at 940.

In response to Defendant's Motion for Summary Judgment, Plaintiff concedes, "[T]he defendant didn't cause the accumulation nor does this case involve a situation where the defendant negligently performed snow and ice removal which left an unnatural accumulation." (Pl. Opp'n Br. 5.) Instead, Plaintiff argues that Defendant is liable for "doing nothing."

Plaintiff cites three Illinois cases for the proposition that a party can voluntarily assume a duty where no duty would otherwise exist: *Tressler v. Windfield Village Cooperative*, 481 N.E.2d 75 (Ill. App. Ct. 1985) (*Tressler*); *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 411 N.E.2d 1168 (Ill. App. Ct. 1980) (*Schoondyke*); and *Eichler v. Plitt Theatres, Inc.*, 521 N.E.2d 1196 (Ill. App. Ct. 1988) (*Eichler*). As an initial matter, Plaintiff overstates the law as stated in those cases. Each of the three cases cited by Plaintiff involves a voluntary undertaking of an obligation *by contract*. To the extent Defendant voluntarily undertook to remove snow and ice in the absence of a contract, Defendant can only be liable if its removal was negligent and caused unnatural accumulation. *Ciciora*, 581 F.3d at 482. Furthermore, each of Plaintiff's cases is factually distinguishable from the one at hand.

In *Tressler*, a tenant brought suit against her landlord for negligent failure to comply with a covenant to remove snow from her walkway. 481 N.E.2d at 75. The plaintiff had entered into a written lease with the defendant, who, at the time of signing,

provided her with a handbook stating that he would arrange for snow removal. *Id.* The court stated that a landlord can be liable for breaching a covenant to remove snow only if he failed to use due care in performing the covenant but held that the issue regarding the reasonableness of the landlord's delay in removing the snow precluded summary judgment. *Id.* at 77.

In *Schoondyke*, the plaintiff slipped on some snow in the driveway of her parents' condominium. 411 N.E.2d at 1170. She sued the condominium association for negligent breach of a contractual duty to remove the snow, which had fallen in the morning and still remained in the evening when she returned. *Id.* The plaintiff's parents had entered into an agreement with the association, in which the association agreed to perform snow removal; and her parents' monthly assessments included a snow-removal fee. *Id.* at 1170-71. The court held that this contractual obligation created liability to the plaintiff even though she did not own the condominium unit because it was foreseeable that the association's failure to perform its contractual obligation to clear snow could cause harm to a non-owner resident. *Id.* at 1173.

In *Eichler*, a patron slipped and fell on some ice in a movie theater parking lot. 521 N.E.2d at 1198. She sued the owner of the parking lot, the theater (which leased the lot from the property owner), and a landscaping company that had contracted with the property owner to perform snow plowing and snow removal. *Id.* Although she acknowledged that there was no common-law duty to remove naturally accumulating snow and ice, the plaintiff argued that the defendants had assumed such a liability by contract. *Id.* An easement agreement between the property owner and owners of

9

adjacent property provided that each party's obligation to maintain its parking lot includes "the prompt removal of all . . . snow and ice." *Id.* The theater's lease with the property owner provided that the theater would assume all rights and obligations under the easement agreement. *Id.*

The court found that summary judgment was improperly entered in favor of the property owner and its lessee because the easement agreement constituted a contractual assumption of the obligation to remove all snow and ice such that the other party to the agreement reasonably relied on that undertaking as being necessary for the protection of third parties. *Id.* at 1200-01 (citing Restatement (Second) of Torts § 324A (1965)). Although the easement agreement could not be construed as an agreement to remove "every bit of snow and ice," the agreement was construed to require the property owner to remove all that is reasonably practical. *Id.* at 1201-02. The court held that summary judgment was appropriate as to the landscaping company because it had only specifically contracted to perform snow plowing and snow removal – not ice removal. *Id.* at 1201.

In contrast to *Tressler*, *Schoondyke*, and *Eichler*, this case does not involve any express contractual assumption of a duty to remove snow and ice. Throughout her brief, Plaintiff repeatedly refers to Defendant's Snow Removal Plan as a "snow and ice removal program" and attempts to elevate its legal significance to that of a binding contract to remove ice from the parking lot. Nothing in the record allows for an inference that Defendant's Snow Removal Plan is anything other than an internal policy memorandum. Plaintiff does not identify any other party to the purported agreement who

10

could have reasonably relied on any purported undertaking for the protection of third parties. *Contra Eichler*, 521 N.E.2d at 1200-01.

Moreover, even if the Snow Removal Plan could be construed as a contract (presumably between the Base and its employees), it cannot be construed as an agreement to remove *all* snow and ice from the Commissary lot. It merely sets forth assignments for snow removal and requests supervisors and associates to "[p]lease take the time to throw some salt on a slippery spot if [they] see it." (*See* SOF ¶ 11); *cf. Judge-Zeit v. Gen. Parking Corp.*, 875 N.E.2d 1209, 1217 (Ill. App. Ct. 2007) (*Judge-Zeit*) (holding that contract providing for reimbursement of snow-removal expenses did not create an affirmative duty to remove the snow in a parking facility absent express language imposing that obligation); *contra Eichler*, 521 N.E.2d at 1198 (finding assumption of obligation because of express agreement to remove "all snow and ice"). Property managers do not undertake a duty to plow snow or ice from their property merely by contracting with a snow removal service. *Sells v. Great Atl. & Pac. Tea Co.*, 525 N.E.2d 1127, 1131-32 (1988). Therefore, no obligation can legally be inferred from a property manager's purported agreement with its own employees.

In the absence of a contractual duty, Defendant can only be liable if it voluntarily assumed a duty to remove the ice and performed that obligation in a manner that resulted in an unnatural accumulation of snow or ice or added to an existing hazard. *Ciciora*, 581 F.3d at 482 (citing *Judge-Zeit*, 875 N.E.2d at 1218-19; *Buffa v. Haideri*, 839 N.E.2d 618, 624 (Ill. App. Ct. 2005)). In this case, Plaintiff has failed to allege any facts from which a jury could conclude that her injury resulted from an unnatural accumulation of snow or

11

ice or the aggravation of an existing condition. Indeed, Plaintiff expressly disclaims such a theory of liability in her opposition brief.

Although Plaintiff's fall was an unfortunate accident, "[t]he mere presence of snow and ice does not demonstrate negligence." *Ciciora*, 581 F.3d at 484 (quoting *Tressler*, 481 N.E.2d at 77). It is unrealistic to expect property owners to keep all areas free of snow or ice during winter months. *Ciciora*, 581 F.3d at 482. In the absence of any evidence to show that Defendant's voluntary efforts to protect its invitees breached a duty to Plaintiff, Plaintiff does not have a legally sustainable cause of action; and Defendant's Motion for Summary Judgment must be granted. It is therefore unnecessary to address Defendant's alternative arguments: that the danger was open and obvious and that Defendant did not have notice of the icy conditions.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted.

Date: March 11, 2010

JOHN W. DARRAH
United States District Court Judge